IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

TERRANCE HOLLIDAY,                    )
                                      )
                    Plaintiff,        )
                                      )          CIVIL ACTION
vs.                                   )
                                      )          Case No. 4:23-CV-02465
BELLFORT PARTNERS, L.P.,              )
                                      )
                    Defendant.        )

## COMPLAINT

COMES NOW, TERRANCE HOLLIDAY, by and through the undersigned counsel, and files this, his Complaint against Defendant, BELLFORT PARTNERS, L.P., pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG").   In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.      This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq*., based upon Defendant's BELLFORT PARTNERS, L.P., failure to remove physical barriers to access and violations of Title III of the ADA.

1

## PARTIES

2.      Plaintiff, TERRANCE HOLLIDAY (hereinafter "Plaintiff") is and has been at all times relevant to the instant matter, a natural person residing in Sugar Land, Texas, (Ft. Bend County).

3.      Plaintiff is disabled as defined by the ADA.

4.      Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, grabbing, grasping and/or pinching.

5.      Plaintiff uses a wheelchair for mobility purposes.

6.      In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7.      Defendant, BELLFORT PARTNERS, L.P. (hereinafter "BELLFORT PARTNERS, L.P.") is a domestic limited partnership that transacts business in the State of Texas and within this judicial district.

8.     Defendant, BELLFORT PARTNERS, L.P., may be properly served with process via its Registered Agent, to wit:  c/o Jon Spears, Registered Agent, The National Realty Group, Inc., 15120 Northwest Fwy., Houston, TX  77040.

## FACTUAL ALLEGATIONS

9.     On or about May 26, 2023, Plaintiff was a customer at "Chile & Lime Refresquerias", a business located at 10732 W. Bellfort Blvd., Houston, TX  77099, referenced herein as "Chile & Lime".  *See* Receipt attached as Exhibit 1.  *See* Selfie attached as Exhibit 2.

10.     Defendant, BELLFORT PARTNERS, L.P., is the owner or co-owner of the real property and improvements that Chile & Lime is situated upon and that is the subject of this action, referenced herein as the "Property."

11.     Defendant, BELLFORT PARTNERS, L.P., as property owner, is responsible for complying with the ADA for both the exterior portions and interior portions of the Property. Even if there is a lease between Defendant, BELLFORT PARTNERS, L.P., and a tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendant's requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations.   *See* 28 CFR § 36.201(b).

12.     Plaintiff's access to Chile & Lime and other businesses at the Property, located at 10732 W. Bellfort Blvd., Houston, TX  77099, Harris County Property Appraiser's property parcel identification numbers 0441040000084 and 0441040000082 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendant is compelled to

3

remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

13.    Although the Property is comprised of two parcels of land, for purposes of this lawsuit and the ADA, the Property should be considered as one "Site" because both parcels share a common parking lot, both parcels are owned by Defendant, there is one building spanning both parcels, there is a single accessible route spanning both parcels, and there are no open or notorious indications of separate parcels.

14.    Plaintiff lives 6 miles from the Property.

15.    Given the very close vicinity of the Property to the Plaintiff's residence, Plaintiff is routinely driving by the Property on at least a monthly basis.

16.    Plaintiff has visited the Property twice before as a customer and advocate for the disabled.  Plaintiff intends to revisit the Property within six months after the barriers to access detailed in this Complaint are removed and the Property is accessible again.  The purpose of the revisit is to be a return customer, to determine if and when the Property is made accessible and to substantiate the already existing standing for this lawsuit for Advocacy Purposes.

17.    Plaintiff intends on revisiting the Property to purchase goods and/or services as a return customer as well as for Advocacy Purposes but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

18.    Plaintiff travelled to the Property as a customer twice previously and as an independent advocate for the disabled, personally encountered many barriers to access the Property that are detailed in this Complaint, engaged many barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury if all the illegal barriers to access

4

present at the Property identified in this Complaint are not removed.

19.     Plaintiff became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff may encounter a different barrier to access identified in the Complaint in a subsequent visit as, for example, one accessible parking space may not be available and he would need to use an alternative accessible parking space in the future on his subsequent visit.  As such, all barriers to access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

20.     Plaintiff's inability to fully access the Property and the stores in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an injury in fact.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

21.     On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

22.     Congress found, among other things, that:

(i)     some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)    historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive

5

social problem;

(iii)     discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)     individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)      the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

23.     Congress explicitly stated that the purpose of the ADA was to:

(i)      provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)     provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

* * * * *

(iv)     invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

24.      The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

25.     The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C.

§ 12181; 28 C.F.R. § 36.508(a).

26.    The Property is a public accommodation and service establishment.

27.    Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

28.    Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq*.; 28 C.F.R. § 36.508(a).

29.    The Property must be, but is not, in compliance with the ADA and ADAAG.

30.    Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property and as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

31.    Plaintiff intends to visit the Property again as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in

7

this Complaint.

32.     Defendant, BELLFORT PARTNERS, L.P., has discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

33.     Defendant, BELLFORT PARTNERS, L.P., will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant, BELLFORT PARTNERS, L.P., is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

34.     A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

i.     There are changes in level at Property exceeding ½ (one-half) inch that are not properly ramped in violation of Section 303.4 of the 2010 ADAAG standards. Specifically, there is an approximately 3/4-inch vertical rise at the entrance to Cricket Wireless, thus rendering the interior of the Property inaccessible. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property.

8

ii.     As a result of the barrier to access referenced in (i), the maneuvering clearance
of this accessible entrance is not level (surface slope in excess of 1:48) in
violation of Section 404.2.4.4 of the 2010 ADAAG standards. This barrier to
access would make it difficult for Plaintiff to access this unit of the Property
since it is often necessary for individuals in wheelchairs to need to use their
hands to both wheel through the doorway and keep the door open with another
hand.  When the maneuvering clearance is not level, this ordinarily difficult
process is made even more difficult by the inappropriately higher slope.

iii.    At Unit 10802, there is a doorway threshold with a vertical rise of
approximately 3/4 inch and does not contain a bevel with a maximum slope of
1:2 in violation of Section 404.2.5 of the 2010 ADAAG standards. This
barrier to access would make it dangerous and difficult for Plaintiff to access
the interior of the Property at this location as the vertical rise at the door
threshold could potentially cause Plaintiff to tip over when attempting to
enter.  Moreover, this barrier to access is made more difficult by the fact that
it is in the doorway and Plaintiff would be required to hold the door open with
one hand while attempt to the "push" the wheel of the wheelchair over the
vertical rise.

iv.     Between Units 10800 and 10802, the walking surfaces of the accessible route
have a slope in excess of 1:20 in violation of Section 403.3 of the 2010
ADAAG standards. This barrier to access would make it dangerous and
difficult for Plaintiff to access the units of the Property. As the accessible
route is in excess of 1:20, it is considered an accessible ramp. As the slope

9

exceeds 1:10, this ramp is in violation of Section 405.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because when ramps are too steep (more than 1:12) it requires too much physical arm strain to wheel up the ramp and increases the likelihood of the wheelchair falling backwards and Plaintiff being injured.

v.    Between Units 10800 and 10802, the walking surfaces of the accessible route have a cross slope in excess of 1:48, in violation of Section 403.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because excessive cross-slope along accessible routes increases the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff.

vi.   As a result of the barriers to access identified in (iv) and (v) above, the Property lacks a continuous accessible route connecting the different units and accessible spaces of the Property.  This is a violation of section 206.2.2 of the 2010 ADAAG Standards.

vii.  Between Units 10800 and 10802, there are vertical rises in excess of ¼ inch along the accessible route or path in violation of Section 303.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access public features of the Property as vertical rise in excess of ¼ inch may cause Plaintiff's wheelchair to snag on the vertical rise and tip over.

viii.    Due to the barriers to access identified in paragraph 33 (i), (ii), (iii), not all entrance doors and doorways comply with Section 404 of the 2010 ADAAG standards, this is a violation of Section 206.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

ix.    For the entire shopping plaza (both parcels), due to the raised sidewalk of about 6 inches with no accessible ramps, the Property lacks an accessible route from the parking lot to the accessible entrances of the Property in violation of Section 206.2.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

x.    Despite having a parking lot that is open to the public with more than four spaces, the Property has no accessible parking spaces complying with Section 502.1 of the 2010 ADAAG standards in violation of Section 208.2 of the 2010 ADAAG standards.  There are a total of 69 marked parking spaces, which requires a minimum of three (3) accessible parking spaces, but there are zero. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space and limited the travel options to visit the Property.

xi.    Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

35.    The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

36.    Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

37.     The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

38.      All of the violations alleged herein are readily achievable to modify to bring the Property into compliance with the ADA.

39.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

40.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant, BELLFORT PARTNERS, L.P., has the financial resources to make the necessary modifications since the Property is collectively valued at $1,597,541.00 according to the Property Appraiser website.

41.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable.

42.     The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendant has available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction available from the IRS for spending money on accessibility modifications.

43.     In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

44.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant, BELLFORT PARTNERS, L.P., is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

45.     Plaintiff's requested relief serves the public interest.

46.     The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, BELLFORT PARTNERS, L.P.

47.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, BELLFORT PARTNERS, L.P., pursuant to 42 U.S.C. §§ 12188 and 12205.

48.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, BELLFORT PARTNERS, L.P., to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendant, BELLFORT PARTNERS, L.P., in violation of the ADA and ADAAG;

(b)     That the Court issue a permanent injunction enjoining Defendant, BELLFORT PARTNERS, L.P., from continuing their discriminatory practices;

(c)     That the Court issue an Order requiring Defendant, BELLFORT PARTNERS, L.P., to (i) remove the physical barriers to access and (ii) alter the subject Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)     That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses

and costs; and

(e)     That the Court grant such further relief as deemed just and equitable in light of the

circumstances.

Dated: July 6, 2023.

Respectfully submitted,

Law Offices of
THE SCHAPIRO LAW GROUP, P.L.

/s/  Douglas S. Schapiro
Douglas S. Schapiro, Esq.
State Bar No. 54538FL
The Schapiro Law Group, P.L.
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com


ATTORNEYS FOR PLAINTIFF